Morning, gentlemen, we'll call the case of Lisa Earl versus NVR Inc. Docket number 2020109. Mr. Strasburg. Thank you, Your Honor. And may it please the court, I would respectfully request four minutes for rebuttal. Sure. Thank you, Your Honor. When we're Winski versus Ford was rendered in 2002, the law in Pennsylvania involving the consumer protection law was quite different. And that's why respectfully, that court look to foreign jurisdictions for guidance as to how Pennsylvania would rule on the gist of the action and economic loss doctrine as it applies to the unfair trade law. Trade practice claim. Now, however, not only is there persuasive authority that the prediction was off the mark, I respectfully submit that there's compelling authority, and that comes in the form of the binding precedence of night in Dixon, as well as the vast body of appellate decisions in Pennsylvania that have ruled on consumer transactions involving contracts involving real estate. So is that enough? Is that enough for us to revisit? We're Winski in light of a lack of PA Supreme Court guidance? Yes, Your Honor, it is. And the reason is found in Robinson's verse Jiffy, where there is persuasive authority that the law in Pennsylvania is has changed, then intermediate courts should be provided significant deference. And we know that from the case of us verse underwriters. And so yes, the intermediate courts are able to permit this court to revisit a prior published opinion without going and balk. Your, Your Honors. My friend on the other side doesn't really address the binding nature of night and Dixon, nor is it really acknowledged that each and every one of these real estate transaction cases where the gist of the action and economic loss doctrine aren't even mentioned. It is beyond dispute that the consumer protection law was promulgated by the General Assembly to provide relief to consumers and the provisions are to be construed liberally. That's why in Rocky, the Supreme Court of Pennsylvania ruled that the common law standard for assessing punitive damages did not apply to the consumer protection law. All you had to do was convince the court that you were entitled to trouble damages. And finally, we know that the Supreme Court of Pennsylvania Hasn't even addressed this issue. And the reason it hasn't addressed this issue is because number one night and Dixon are binding and number two, it's always been beyond dispute that this act by the General Assembly supplements, the common law. It supplements it. So the economic loss doctrine, the gist of the action doctrine really have no business when it comes to the consumer protection law. And I'd like to draw the court's attention to a case that is currently under review by the Supreme Court of Pennsylvania, and it is Greg verse Ameriprise which is 216 Atlantic third to to to that case. Sorry, is that 216 Atlantic 3222 Yes, Your Honor. Okay. Yes, Your Honor. That case is on appeal from the Superior Court where the Superior Court held that when analyzing the catch all provision of the consumer protection law. A court can apply a strict liability standards. Okay, not, not just negligence, but strict liability, which is a far cry from an intentional tort. And that is consistent with all of the cases that follow the Supreme Court's direction to liberally construe the statute and on appeal. Like every other case in Pennsylvania that has dealt with these issues, the gist of the action and the economic loss doctrine aren't even on the table. The Supreme Court of Pennsylvania is simply going to decide whether it's a negligence standard or a strict liability standard, and they're never going to decide whether or not the gist of the action or economic loss doctrine applies, because nobody's probably going to raise it. All of these cases that have been litigated involving this statute have been litigated by very able counsel. Don't you think that if these doctrines applied in Pennsylvania, somebody would raise them. They haven't raised them because these doctrines don't apply. This is an act of the General Assembly that supplements common law remedies. It is a clear statement by the General Assembly that consumers need protected and wrongdoers need to be deterred. So, Mr. O respectfully requests that this court revisit Rewinsky and overrule it as it did in Robinson following the intermediate decisions of the New Jersey courts and remand the case for further proceedings. Thank you, and I'll take any further questions by the court. We'll have you back here on rebuttal. Judge Porter, Judge Bibas. I do have a question. I'm sorry. I'm sorry. Go ahead. Mr. Strathburger, I acknowledge the strength of Knight and Dixon, but it's been curious to me that those courts didn't just say, look, there's a consumer protection law claim here. Therefore, categorically, the gist of the action doctrine and the economic loss doctrine don't apply. Instead, they went through the gist of the action framework and said, ah, it sounds in tort, not contract, so it doesn't apply. Why didn't they just say, look, because there's a statutory claim, it cannot apply. Your Honor, those cases were were decided on the law. I understand and acknowledge that they went through the facts, but those cases were still decided on the law. And we know from Dixon that followed Knight that that court cited to the honorable Judge Wettick, who is who is now retired. But what Judge Wettick said in a common pleas opinion is that if those doctrines apply to a consumer protection claim, then the statute is totally eviscerated. All of the protections that the General Assembly have promulgated go away. And we know from the Supreme Court of Pennsylvania, the case that I cite in my brief, Sterlick, that common law cannot trump the will of the General Assembly. And this statute has been around since 1963. Thank you, Judge Bevis. Nothing further. Thank you. We'll have you back up here in rebuttal. Mr. Giancola. Thank you, Your Honor. May it please the court. My name is Russ Giancola. I represent the NVR Inc. What we have here is a claim where Ms. Earle signed a contract. And six years later, pursued an action saying basically did not get the benefit of her bargain that she didn't get what she was promised under that contract. This court is held in Wierwinski and in subsequent decisions. But the subsequent decisions were not published decisions, correct? That's correct, Your Honor. However, they were issued. At least one of those decisions was issued after Knight and Dixon or after Knight. Let me just go straight to footnote 12 in Dixon. I mean, if there was ever a call to revisit this issue, how do you square your argument footnote 12 in Dixon? Well, I think Judge Porter's observation was a good one. That footnote in Dixon really only addresses the economic loss doctrine. And Wierwinski addressed two different doctrines. They're somewhat related, but they are distinct. There's the gist of the action doctrine and the economic loss doctrine. That footnote in Dixon only really said Wierwinski, from its view, Wierwinski is inconsistent with Pennsylvania law with respect to the economic loss doctrine. It said nothing about the gist of the action doctrine. And in fact, it went through an analysis determining what the gist of that action was, whether it sounded in contract or tort. If it if the Superior Court felt that, no, this categorically you cannot assert a claim under or that you cannot assert the defense of gist of the action where there's an unfair trade practices claim. That doesn't matter whether the claim sounds in contract or tort. They wouldn't have bothered with the analysis at all. They could have simply just said Wierwinski is wrong on both economic loss doctrine and gist of the action doctrine. It didn't do that. It went through the exercise and said this claim sounds in tort. Sir, could I ask you, Mr. Giancola, about each of Missouril's specific unfair trade practices to see if it's a tort claim or a contract claim? So first, you know, she's challenging the advertising of the way you advertise the home and says you had an intent not to sell them as advertised. Is that is that actionable under the consumer protection law? I think that is a broad way, again, of saying she didn't get what she thought she was getting. All right. But but when I look at the statute to Section 201-249 specifically covers advertising goods or services with intent not to sell them as advertised. If this is not actionable, is there anything that's going to be actionable under that section? What does that section mean if it doesn't cover you didn't get what was advertised? Your Honor, I would respectfully argue that this is not an issue of you have to look further into the complaint. The complaint could you tell me what will be left of that section if your claim that you didn't get what you what you wanted, plus an allegation of intent isn't the intent not to deliver it isn't enough for that section. What will that section what does that section mean? What does it cover? How is it not a nullity if it doesn't cover this case? Give me an example of what it would cover. Your Honor, I would argue that it would be, for example, in night, a night you had a I believe night was the case where you had a used car. And this was this was an existing car and they fundamentally lied effectively. So you say you're drawing a distinction that lying about existing goods would be covered, even though that's also covered by the contract. But lying about future goods wouldn't be covered. I don't see how that makes a difference. I also don't see a textual difference in this that says it has to be a present present thing. But, you know, do you have any your basis is night already goes that far, but it would cover a present a lie about a present good and not about a future breach or misdelivery. I believe that's part of the issue. I think there's also the issue, Your Honor, that simply. There she are. She she contracted it. She contracted to purchase a house and she got a house she purchased. She contracted to purchase a new house and she got a new house. Broad strokes. She argues she didn't get what was represented to her, but specifically in the complaint. The complaint says she didn't get roof shingles that she was supposed to get. She didn't get. OK. All right. Let's talk about the next of the claims. She also claims. So there's the advertising claim. After the advertising, there's a failure to follow warranties claim. All right. Now, your argument is, well, the warranties were part of leading up to the contract. But the contract specifically disclaims all warranties that are beyond that contract. If if this if this warranty claim isn't covered, what is going to be covered by failing to comply with the terms of a written guarantee or warranty? This is section subsection 14 XIV given to the buyer at prior to or after a contract for the purchase of goods or services that section specific contemplates that there's a contract that the warranty can be given beforehand. And this contract, by the way, disclaims it. So. What does that section cover if it doesn't cover these warranties? Your Honor, I would argue that that position doesn't apply here. Why? For the same. For the reason that of record, we already have a contract that shows there isn't a warranty. So you're saying because the contract says no warranty, you can't make a non contractual warranty claim. But I'm not sure what's left of this subsection 14. When would it ever kick in? It would kick in when there is a warranty and it's not being followed. All right. All right. So if there's a warranty that's part of a contract, it's actionable despite the gist of the action doctrine. But where the contract disclaims a warranty, you're saying this statute can't add it on top, which is kind of the opposite of the logic of the gist of the action doctrine, that this is supposed to be for some non contractual things. It would. The gist of the action doctrine provides really that only that the what does the claim sound in this claim is sounding in contract because it is saying I have a warranty and I'm not getting it. But this claim is not sounding in contract because the contract disclaims the warranty, but it was a warranty made before the contract. This contract to be to be clear on the purchase agreement does provide for warranties. There are limited warranties that are provided with the purchase agreement. It is not. It disclaims implied warranties. It disclaims warranties that aren't otherwise set forth in the purchase agreement. Let's go on to the third cluster of her claims, you know, you, you, you promised that these with this was going to be made with, you know, quality finishes quality architecture timeless design beautiful finishes so the architecture was going to be quality. She alleges a failure to repair, you fail to fix many of the problems in the house and said made things worse may do deplex this is complaint 32 and 54. How does that not qualify under subsection little Roman 16 making repairs improvements or replacements on tangible real or personal property of a nature or quality inferior to or below the standard of that agreed to in writing. Your honor. I believe part of the issue is that these are these are subjective claims effectively that they're subjective so it's all puffery and there's nothing objective to a standard of how of that you'll make a repair that you'll make the repair that the building in fact stops leaking is that subjective. Well, your honor, the warranty that NPR has issues with its new homes is very specific about what it does and does not cover it isn't subject to that kind of puffery or squishiness, it is very specific. The issue is the plaintiff. Okay, but but NPR supposedly agree according to paragraph 36 agreed to these repairs after Earl moved in after the sales agreement. So this is not a claim based on the sales agreement or the wording of his warranty. It's based on afterwards she complained, you agreed to make repairs and there's a series of emails back and forth about the repairs. If she wants to sue based on those emails. Why is that not a challenge to not making making repairs of a nature or quality inferior to or below the standard of that agreed to in writing. You can dispute with I mean a trial you can dispute whether you did that or not, but why is that not actionable. Again, because your honor, this is, it is sounding in contract, she's effective there's a contract based on the emails, after the sales agreement, the subsequent agreement, where's the offer and acceptance and consideration based on the emails that say please repair. I would posit that this is a negotiation of a good faith dispute about whether something is or isn't warranted. What consideration is she providing to the extent that she's arguing that something more is covered under the warranty, and it agrees to let that go. In effect, it is a negotiated claim. Okay, is there a release the claims. Not I don't believe there would be a written one beyond what's their signature. Not a date. Okay, let's move on to the last of her claims. He accuses NPR of, you know, saying that you were deceptive there were false representations things like that it's not as specific as the others. But if you didn't make some deceptive representations about quality or about repair etc why wouldn't that be covered, we can dispute factually whether that happened, but at this stage in the litigation. Why wouldn't that be at least potentially actionable under subsection 21 engaging in other fraudulent or deceptive conduct, which creates a likelihood of confusion or misunderstand. The purchase agreement has an integration clause your honor it specifically says in the point of specifically agrees that she's not relying on anything else that you have a justifiable reliance issue with respect to the unfair trade. Okay, as to any representations made before or during perhaps but how about representations made after the agreement. Can the integration clause bar those. No, but it's not quite clear from the complaint what post agreement representations. All right, so here you have an argument about specificity, we can hear from your friend on the other side and reply about what specifically satisfies that. All right, that I'm done with this line of questioning. Thanks for for walking me through it. Thank you. Just Porter anything else. Thank you very much, Mr Jim call. Thank you. You still have time if you want. I would appreciate that. Council for misery has argued that night and Dixon are the persuasive authority you need. As you are well aware, for diversity actions. The job of this court is to look to where the PA Supreme Court would rule the PA Supreme Court hasn't ruled on this point if it's a, I'm sorry. Doesn't Robinson set out a template for this exact scenario. Yes, your honor, you can look to the intermediate appellate courts but they're the standard is whether it's persuasive. As expressed expressed already both night and Dixon don't categorically say just to the action is a non starter with respect to unfair trade practices claims it's sounding contract. You also have them on the economic loss doctrine side, the issue of Ditman, which is a PA Supreme Court case decided in 2018 after both night and Dixon, which goes into quite a bit of detail on the economic loss doctrine side and talks about the reason to approach that needs to be taken to look at the source of the duties that are allegedly NPR is only duties to Miss Earl sound and contract, but for the fact that there was a purchase agreement between them. And we are never would have owed any duties to miserable, and all of their duties are set forth in that contract. So, talk a little bit about whether the damages here are economic Okay, so I understand your argument about where Winski, but let's assume where Winski is still good law. All right, is accurately represents the state of Pennsylvania law, or we are bound to follow it. Um, doesn't Earl pre plead property damage here that her property is defective poorly constructed created unsafe environment violation of building codes that's all in paragraph, 18 of a complaint. That's not just monetary damage. It's not. I do not read the complaint to say that her property is damaged it is just not to her satisfaction. It effectively is, she needs to spend money to make it the way that she wants the house to be. So you do you have any authority that saying a defective leaky poorly constructed house does not amount to property damage that that's just economic loss within the economic loss doctrine. We did not say that your honor if you'd like I'd be happy to submit a supplemental brief, if need be for to flush that out, but from our position that property damage there. In general, the idea of property damage really is from an acute event. Both, you know, because it's personal injury or property damage and there's no acute event that NPR. And there's no allegation that NPR through some acute event damaged. Miss Earl's property that she just does not like the way that was built. Sure. Anything else, Mr Jinkle. Just simply, your, your honors, as the courts aware in our internal operating procedure 9.1 requires this court to follow its prior precedents on this on bunk decision is necessary there hasn't been a binding or guiding principle from the clearly says you need to reverse course, the Superior Court precedent cited by Israel, don't get you there either. Very, really, the body of law, they're referring to with respect to unfair trade practices claims. This doctrine, these claims the statute has been around for decades. Long before we're in ski, and the court was aware of those precedents, when it issued that decision. It's still held just to the action and economic loss doctrine. Both of those doctrines, or the unfair trade practices claims in circumstances such as this. And candidly, even if the court were inclined to follow night and Dixon for the principle that the economic loss doctrine is an applicable. There would still be the issue of the just the action doctrine. With that we argue that the district courts decision should be. Thank you very much. Thank you. Mr stress burner. I have nothing further Thank you, Your Honor, Mr stress burger I would like to hear your response to the argument that you're the deceptive. You know, Mr Jancola made a point that your, your allegations of deceptive conduct are rather vague what, what do you have in there that specific enough to survive dismissal and proceed. Your Honor, you can look at paragraph 11, which is analogous to what happens in night plaintiff alleges that she made her decisions regarding construction condition overall amenities by relying upon the communications representations and statements made by defendant to entice her to buy her luxury home. That's exactly what happened with the, with the car. And that's why we think that her claim survives. Cal's a district court district court to the district court error in following where when ski. Your Honor. It's, it's, that's not a simple question that the district court was permitted to to follow where when ski, but it was also permitted not to follow where when ski and we know that from Robinson because the district court and Robinson did not follow Becker, and it was the brief speaks for itself but there is a permission to follow a published decision from this court. Thank you. Thank you and Council before we sign off a few folks would be good enough to submit some short letter briefs, and maybe a week from today on whether the condition of the house as it were counts as property damage. I believe that's the, the issue that judge be this was discussed with Mr gene Cola, who offered to submit some authority for us. So if you could submit that those documents to us maybe a week from today no more than five pages. That would be greatly appreciated. Thank you. Thank you. All right, gentlemen, have a great rest of your day. Thanks for being with us. Thanks for your briefs and your arguments.